## STATE v. AERATED PRODUCTS COMPANY.

123 N. W. (2d) 692.

October 4, 1963—No. 38,639.

*Thuet & Todd, Paul A. Thuet, Jr.,* and *Francis L. Bartholet,* for appellant.

*Keith M. Stidd,* City Attorney, and *Joseph A. Hadley,* Assistant City Attorney, for respondent.

OTIS, JUSTICE.

This is an appeal from a judgment dated October 20, 1961, convicting defendant of violating a Minneapolis ordinance prohibiting the sale of fluid milk products without obtaining a milk pasteurizing license from the city.

The complaint under which defendant was prosecuted charges that on October 13, 1960, the defendant sold Walgreen Company a quantity of milk products, consisting of whipped cream in a container, without a license. A demurrer on grounds not here relevant was overruled on February 9, 1961.

Defendant company processes and distributes at wholesale to institutions and restaurants a product sold under the name of Instant Whip. It is a commodity produced in a 6- or 8-ounce container under pressure for use as a dessert topping on ice cream, jello, puddings, pie, and cake.

Defendant admits the sale and its failure to obtain a license. By way of defense, however, it asserts (1) that the ordinance is invalid because it is vague and indefinite, and (2) that its operations are excepted from the licensing provisions of the ordinance.

The basic ordinance may be found in Minneapolis Code of Ordinances, July 1, 1960, § 731.020, p. 729, and provides as follows:

"No person shall sell within the limits of the City any pasteurized milk or *fluid* milk products unless such milk or fluid milk products have been pasteurized in a pasteurization plant for which a certificate of inspection has been secured and a Minneapolis Milk Pasteurizing License has been issued for the operation thereof." (Italics supplied.)

There is no definition in the ordinance of fluid milk products but only of milk products,[1] which specifically includes whipped cream and excludes ice cream mix. The ordinance does not define ice cream mix[2] but does define whipped cream as follows (§ 730.010, p. 728):

"Cream to which a harmless gas has been added to cause whipping

---

[1] Minneapolis Code of Ordinances, § 730.010, p. 726. Compare with Minn. St. 32.391, which includes "fluid milk products" in a definition somewhat similar to that of "milk products" found in the city ordinance.

[2] Compare Minn. St. 1957, § 31.01, subd. 8, in effect at the time of this prosecution (now superseded by Minn. St. 32.55, subd. 4), which provided as follows: "* * * 'Ice-cream mix' means the mix from which ice-cream is frozen, made from a combination of milk products and one or more of the following ingredients: eggs, sugar, dextrose, corn syrup in liquid or dry form, and honey, with or without flavoring and coloring, and with or without edible gelatin or vegetable stabilizer. Ice cream mix contains not more than one half of one percent by weight of edible gelatin or vegetable stabilizer, not less than 12 percent by weight of milk fat, and not less than 20 percent by weight of total milk solids. Ice-cream mix in concentrated or condensed form shall contain such relative amounts of ingredients that, when diluted according to directions, it shall comply with the above definition of ice-cream mix."

of the product. It may also contain sugar, other harmless flavoring, and a harmless stabilizer."

■ Because the matter is decided on other grounds it is not necessary to consider or discuss the constitutionality of § 731.020, which appellant claims is vague and indefinite because it contains no definition of what constitutes a *fluid* milk product.

■ The only evidence calculated to bring the defendant's product within the provisions of the licensing ordinance is testimony of a chemist employed by the Minneapolis Health Department who stated that his examination of the container sold by defendant disclosed its contents to be pure butterfat. Defendant's manager and principal owner testified that his company manufactured Instant Whip under a franchise from Aeration Processes of Columbus, Ohio, and had been selling to Walgreen for about 10 years. He stated that the ingredients of Instant Whip consist of a product sold to his company as "ice cream mix" by the Kohler Ice Cream Mix Company of White Bear Lake. His knowledge of the ingredients of the Kohler product was based only on what appeared on the label. He testified that it was made from "cream, stabilizer, sugar, vaniilin * * * corn sugar * * *, and usually some emulsifier." The ice cream mix is delivered to defendant in 10-gallon containers and is processed by it through a filler into smaller cans which are capped, gassed with a nitrous oxide gas, and chilled for sale.

The city's chemist conceded that butterfat is found in ice cream mix. He made no analysis to determine the percentage of fat in defendant's product or the presence of sugar or any other material.

As we view the evidence, the state has failed to sustain its burden of proving by a fair preponderance of evidence a violation of the ordinance. Defendant is charged with selling whipped cream, which is defined as cream to which gas, sugar, and other harmless matter have been added. We are unable to find in the record any evidence that "cream" as used in the definition of whipped cream was an ingredient of defendant's product. We cannot escape the conclusion that the uncontradicted testimony brings defendant within the exceptions to the licensing ordinance. Defendant has utilized what it had a right to assume was an exempt product, and we fail to understand how the addition of gas,

sugar, and other harmless ingredients could change the basic character of the product from an exempt to a nonexempt commodity. For reasons which are not disclosed in the record the city has chosen to exclude "ice cream mix," notwithstanding the fact that it contains butterfat.[3] If the mix is once exempt we are of the opinion that the process enjoys a continuing exemption until some other nonexempt milk product is added. The evidence being that the only milk product contained in defendant's commodity is ice cream mix, we hold that a violation of the ordinance has not been proved and it was error to find defendant guilty.

Reversed.

---

[3]In finding the defendant guilty the trial court observed, among other things: "* * * that pure butterfat was found upon analysis to be a part of the contents of the container; that pure butterfat is found in the milk of cows and is a milk product; that the defendant corporation had not obtained a milk pasteurization license from the City of Minneapolis and the product did not come within the exceptions of the purview of the ordinance, * * *."